David A. Kubichek
Assistant United States Attorney
District of Wyoming
P.O. Box 22211
Casper, WY  82602-5010
307-261-5434

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| **TEYA STASSINOS,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **Civil No. 11-CV-313-F** |
| v. | ) | |
| | ) | **Criminal No. 09-CR-354-D** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

---

## UNITED STATES' RESPONSE TO THE DEFENDANT'S
## MOTION TO VACATE HER SENTENCE UNDER 28 U.S.C. § 2255

---

On October 5, 2011, the Defendant/Petitioner Teya Stassinos (Defendant) filed a motion under 28 U.S.C. § 2255 which seeks to have her conviction and sentence in this case set aside.  In support of her motion, she alleges that she was victimized by constitutionally ineffective assistance of counsel, and that the court violated her rights to due process and equal protection by virtue of its having failed to fully comply with Rule 32, Fed. R. Crim. P.  For the reasons outlined below, her motion must be denied.

## BACKGROUND

On March 17, 2010, the Defendant was charged in a superseding indictment with conspiracy to traffic in methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Clerk's Docket Report [PACER System], Document 171).[1]  She originally pleaded not guilty to this charge (*id.*, Doc. 223 [arraignment]).  However, on August 4, 2010, the Defendant appeared in court to enter a guilty plea to Count One of the superseding indictment pursuant to a plea agreement with the government (Doc. 347 [Plea Agreement] and Doc. 366 [minutes of change of plea hearing]; *see also* Change of Plea Transcript ["COP Tr."] at 1).

The plea agreement provided that the Defendant would plead guilty to Count One (Doc. 347 at 2 [¶ 2]), and would further agree to cooperate with and provide substantial assistance to the United States (*id.* at 6-7 [¶ 9(b)-(e)]).  In addition, the plea agreement required that the Defendant stipulate that her relevant conduct for purposes of determining her base offense level under the Sentencing Guidelines was between 500 grams and 1.5 kilograms of methamphetamine (*id.* at 4-5 [¶ 7(a)]).[2]

---

[1]  Citations to the Clerk's docket report on the PACER System will hereinafter be to the document number; *i.e.,* the superseding indictment, which is document number 171, would be cited as "Doc. 171."

[2]  The resulting base offense level was 32, and was based on the parties' determination that the methamphetamine involved in the Defendant's offense, including both the amounts with which the Defendant was personally involved and the amounts handled by her co-conspirators which was either known by or was reasonably foreseeable to her, was the stipulated amount of 500 grams to 1.5 kilograms of methamphetamine (Doc. 347 at 4-5 [¶ 7(a)]).  The plea agreement also provided that at sentencing, the Defendant could try to prove that the methamphetamine for which she was personally responsible was less than 500 grams in regard to applying the factors enumerated in

(continued...)

The plea agreement also noted that the Defendant would seek a downward departure in her criminal history score, an attempt the government promised to oppose, and would further argue that she was eligible for a minor role adjustment under § 3B1.2, a claim the government indicated it would support if the probation office determined it was justified (*id.* at 4-5 [¶ 7(b)-(d)]).

For its part, the government agreed to recommend that the Defendant receive a three offense level adjustment under § 3E1.1 of the Guidelines to reflect her acceptance of responsibility (*id.* at 7-8 [¶ 11(a)]). In addition, the government agreed to file a motion on the Defendant's behalf under § 5K1.1 and/or 18 U.S.C. § 3553(e) to reflect her cooperation and substantial assistance to the United States (*id.* at 8 [¶ 11(c)]). Finally, the government agreed to recommend the Defendant receive a sentence at the low end of the applicable sentencing guideline range (*id.* at 9 [¶ 11(e)]).

The Defendant's change of plea hearing was conducted by the magistrate judge. At the beginning of that hearing, the Defendant was first placed under oath, and then the court asked her a series of questions to ensure she was competent to go forward (COP Tr. at 1-3). Based on her answers, she clearly was (*id.* at 2-4). The court then explained the statutory penalties the Defendant faced if convicted on the methamphetamine conspiracy charge, and she indicated she understood and had gone over the charges against her with her lawyer (*id.* at 5). Next, the terms of the plea agreement were described on the record for the Defendant and for the court, and at the end of that process the Defendant indicated that she understood the plea agreement when she signed it based on

---

[2](...continued)
18 U.S.C. § 3553(a).

the explanations provided her by her counsel (*id.* at 8-14).  In that connection, the Defendant affirmed that the plea agreement contained all the promises that had been made to her in regard to her guilty plea, and that she had signed it voluntarily and without being forced or coerced (*id.* at 14-15).

Next, the court explained for the Defendant how the sentencing process operated in federal court, and how the government and her lawyer anticipated it might play out in her case (*id.* at 15-17).  In that regard, she was specifically advised that her ultimate sentencing range could be as a mandatory minimum 120 month sentence to as low as possibly 78 to 97 months (*id.*).  The Defendant indicated that she understood all of this and that where she ultimately might fall in terms of the Sentencing Guidelines was at that point uncertain (*id.*).

The court then described for the Defendant the constitutional rights she would necessarily be waiving by pleading guilty, and again, she affirmed she understood (*id.* at 17).  After concluding that business, and after ascertaining that she continued to want to enter her guilty plea (*id.* at 19), the court proceeded to determine whether there was a factual basis for her guilty plea (*id.* at 19-30).  On the basis of an extensive, often grudging, colloquy with the Defendant, and with the concurrence of both the prosecutor and Defendant's counsel, the court determined that there was indeed a sufficient factual basis for her guilty plea, and accordingly accepted it as knowing and voluntary (*id.* at 19-31).

All of which led to the preparation of a presentence report (PSR) concerning the Defendant.  The PSR was completed on September 10, 2010 (PSR at 1).  Among other things, the PSR

summarized the Defendant's criminal conduct in regard to the conspiracy in order to determine what her base offense level should be under the Sentencing Guidelines.  In that regard, the PSR noted as follows:

14.    A Confidential Informant stated he knew the defendant made trips to Utah and sold methamphetamine for Jozette Arnoldi.  Cami Braden stated she introduced the defendant and others to Karen and Kenny Souza.  Kelsey Bolding stated she gave $1,000 to the defendant on two occasions for the defendant to purchase methamphetamine for her.  Both times, the defendant brought back a half ounce of methamphetamine for her, which totals one ounce of methamphetamine.

15.    On July 28, 2009, Craig Stephens stated on one occasion, he, the defendant, J. Arnoldi and others, all traveled to Utah together.  They obtained one and a quarter ounces of methamphetamine from the Souzas.  Thayne Arnoldi stated he used the defendant's car to travel to Utah to obtain methamphetamine.  Further, he related knowing the defendant traveled several times to Utah with J. Arnoldi to obtain and sell methamphetamine.

16.    Jozette Arnoldi stated she traveled with the defendant on three occasions, obtaining three ounces of methamphetamine each time.  Further, she knew the defendant had traveled by herself on two occasions, obtaining an ounce of methamphetamine each time.  J. Arnoldi estimated from May to June 2009, the defendant, along with others, traveled to Utah every two days to obtain at least an ounce of methamphetamine each time.  Further, from June to July 2009, the defendant, Thayne Arnoldi, and J. Arnoldi, traveled to Utah approximately three times a week obtaining between three and four ounces.  Therefore, giving the defendant the benefit of the doubt a total of 30 ounces or 850.5 grams of methamphetamine can be attributed to the defendant.

17.    Karen Souza stated the defendant came to Utah at least 20 times, by herself, to obtain methamphetamine.  On fifteen of these occasions she received an ounce of methamphetamine and the other five times it is unclear the amount received. Further, there are no amounts associated with the trips for the 30 times the defendant made to Utah with J. Arnoldi to obtain methamphetamine from Souza.  This totals 15 ounces, however, some of these amounts may be accounted for in the statements of Kelsey Bolding and Craig Stephens.  Therefore, deducting the two and a quarter

ounces in their statements, it leaves 12 3/4 ounces or 361.4 grams of methamphetamine can be attributed to the defendant.

18.     Att [sic] totaled defendant's relevant conduct is 1,275.6 grams or 1.275 kilograms of methamphetamine, which falls within the stipulated relevant conduct of more than 500 grams, but less than 1.5 kilograms, establishes a base offense level of 32.

(PSR at 15-16 [¶¶ 14-18]).

Thus, in contrast to the exceptionally "minimalist" picture the Defendant tried to paint at her change of plea hearing regarding her level of participation in the drug conspiracy to which she pleaded guilty, the facts set forth in the PSR showed her to have been both an active and a significant member of that conspiracy. Indeed, based on those facts, the PSR concluded that the Defendant was not eligible for a "minor role" adjustment because, at the end of the day, she "knew the scope and structure of the [methamphetamine] enterprise as well as the activities of others involved," and "[s]he is no less culpable than most of her co-conspirators" (PSR at 16 [¶ 19]).

Based on the foregoing determinations, the PSR determined that her base offense level was 32 pursuant to U.S.S.G. § 2D1.1(c)(5), because her relevant conduct was 1.275 kilograms of methamphetamine, a finding consistent with the plea agreement's stipulation of between 500 grams and 1.5 kilograms of methamphetamine (PSR at 17 [¶ 24]). Because the Defendant was not eligible for a "minor role" adjustment under § 3B1.2, but was eligible for a three level adjustment for acceptance of responsibility under § 3E1.1, her total offense level was 29 (*id.* at 17 [¶ 33]).

In regard to her criminal history score, the Defendant garnered one point for an August 2008 "DWI" conviction in Rock Springs, Wyoming (PSR at 18 [¶ 37]), one point for a November 2009 conviction in Utah for unlawful possession of a controlled substance (*id.* at 19 [¶ 39]), and one point for a February 2010 conviction in Sweetwater County, Wyoming for unlawful possession of a controlled substance (*id.* at 19 [¶ 40]). In addition, she was also awarded an additional two points because during the period she was involved in the methamphetamine conspiracy in this case, she was still on probation for her August 2008 "DWI" conviction in Rock Springs, Wyoming (*id.* at 20 [¶ 42]). With five criminal history points, she was in Criminal History Category III (*id.*). Based on a total offense level of 29, and Criminal History Category III, her initial sentencing guideline range was 108 to 135 months, which was raised to 120 to 135 months under U.S.S.G. § 5G1.1(b) by virtue of the 120 month mandatory minimum requirement of 21 U.S.C. § 841(b)(1)(A) (*id.* at 23 [¶¶ 65, 66]).

Upon its completion, the PSR was circulated to the parties for comments and objections. The government had neither (PSR Addendum at i). The Defendant, however, had one substantive objection; *i.e.,* that she should not have been assigned criminal history points for her 2009 and 2010 state controlled substances convictions (*see* PSR at 19 [¶¶ 39, 40]), because the conduct underlying those offenses constituted relevant conduct *vis a vis* her methamphetamine conspiracy conviction in this case (*id.* at i). The responsible probation officer rejected this objection on the ground that the

controlled substances at issue in those cases were, respectively, prescription pills and MDMA (Ecstasy), whereas the indictment here concerned only methamphetamine (*id.*).

Subsequent to the issuance of the PSR and its Addendum, but prior to the Defendant's sentencing hearing, Defendant's counsel filed a sentencing memorandum in support of his request that the Defendant receive a sentence of no more than 70 months (Doc. 420). Defendant's counsel acknowledged that a 70 month sentence might be below the Defendant's final guideline range (which he thought to be 97 to 121 months), but he argued that it would nevertheless be justified because of how the sentencing factors listed in 18 U.S.C. § 3553(a) applied in her case (*id.* at 3-6).

The Defendant appeared for sentencing on October 13, 2010 (Sent. Tr. at 1). At the beginning of that hearing, the court took up the Defendant's objection to her criminal history score calculation (*id.* at 5). After hearing the argument of the parties, the court decided to remove one point from the Defendant's criminal history score in regard to her 2010 MDMA conviction (PSR at 19 [¶ 40]), but not to sustain her objection to the one point assessed in connection with her 2009 Utah drug possession conviction (*see* PSR at 19 [¶ 39]; Sent. Tr. at 5-15 [argument]; and at 15-16 [court's ruling]). As a result of those rulings, the Defendant's criminal history score was reduced to two points, to which two additional points were added under U.S.S.G. § 4A1.1(2) because the Defendant remained on probation for her 2008 DWI conviction when she engaged in the conspiracy charged in this case (*see* PSR at 20 [¶ 42]; Sent. Tr. at 16). Based on those rulings, the Defendant

remained in Criminal History III which, when combined with her total offense level of 29, produced a guideline range of 120 to 135 months (Sent. Tr. at 16).

After the Defendant's final guideline range was established, the next item of business was for the government to make its motion on the Defendant's behalf under § 5K1.1 of the guidelines to account for her cooperation with the government (*id.* at 17). In that regard, the Assistant United States Attorney outlined for the court the nature of the Defendant's cooperation and assistance and its rationale for the recommended three level downward departure (*id.* at 17-19). In that regard, the government noted that if the court granted its § 5K1.1 motion, the Defendant's guideline range would drop to 78 to 97 months (*id.* at 18).

After the government made its pitch on that issue, Defendant's counsel made his argument that the Defendant should receive an additional one level variance, and a resulting sentence of 70 months, in light of his view of how the sentencing factors set forth in 18 U.S.C. § 3553(a) applied in this case (*id.* at 18-24). The government objected to that motion (*id.* at 25-26).

At the conclusion of all that, the court granted the government's § 5K1.1 motion for a three level downward departure (*id.* at 27), and it further agreed to grant the Defendant's motion for an additional one level variance (*id.* at 28-29). As a result of those rulings, the Defendant's final guideline range was 70 to 87 months (*id.* at 29). Following the Defendant's allocution, the court sentenced her to 70 months imprisonment, five years supervised release, and a $500 fine (*id.* at 31-35).

The criminal judgment incorporating that sentence was filed on October 15, 2010 (Doc. 428). The Defendant did not file an appeal. Her time for doing so would have expired fourteen days later, or on October 29, 2010. *See* Rule 4(b), Fed. R. App. P. Because her § 2255 motion was filed less than a year later, on October 5, 2011, it is clearly timely for purposes of applying § 2255's one year limitation period. *See United States v. Prows*, 448 F.3d 1223, 1227-28 (10th Cir. 2006) (absent an appeal, a criminal conviction becomes final for purposes of § 2255's one year limitation period when the time for taking a direct criminal appeal expires).

## ARGUMENT

In her § 2255 motion, the Defendant has raised four claims for relief. First, she claims her lawyer was constitutionally ineffective by not challenging the 500 grams of methamphetamine for which she was ultimately held accountable at sentencing (*see* Defendant's Memorandum in Support of § 2255 Motion at 7-10) (hereinafter "Defendant's Memo"). Second, she claims her counsel operated under a conflict of interest in representing her because he had allegedly made negative comments about defendants charged with drug offenses and had thus reflected a bias against them (*id.* at 10). Third, the Defendant argues that her counsel was constitutionally ineffective because he did not seek to have her sentencing hearing continued past November 1, 2010, when she says new guidelines came into effect which had the effect of eliminating the provision in former U.S.S.G. § 4A1.1(e) (2009) which added two criminal history points for "recency" - *i.e.,* accounting for the fact that a defendant's instant conviction occurred within two years of a previous offense. She says

her lawyer's failure in this regard resulted in her being sentenced under Criminal History Category

III, rather than Category II (*id.* at 11-12).   Finally, in her fourth claim, the Defendant essentially

claims her attorney was ineffective because he did not challenge the PSR's determination that she

had not been a "minor" or "minimal" participant in the drug conspiracy to which she pleaded guilty

(*id.* at 13-18).[3]   For the reasons outlined below, none of these claims has merit.

Before considering the Defendant's claims, however, it is important briefly to address the

special rules that govern consideration of a motion to vacate under 28 U.S.C. § 2255.   First, a § 2255

motion may not test the legality of matters which could have been resolved on direct appeal.   *United*

*States v. Frady*, 456 U.S. 152 (1982); *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993).

A defendant who fails to raise an issue on direct appeal may present it in a § 2255 motion only if she

can demonstrate cause for her procedural default, and either actual prejudice from the alleged errors,

or that a fundamental miscarriage of justice will occur if her claim is not addressed.   *United States*

*v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994).   Moreover, where the government raises the procedural

---

[3]   The Defendant's fourth issue is actually styled as a straight up "due process" and "equal protection" claim.   However, a fair reading of the Defendant's argument shows that she is actually arguing that her attorney was ineffective by not challenging the 500+ gram drug quantity assigned to her in the PSR (which is also her first claim) and for not challenging the PSR's determination that she was not a "minor" participant in the conspiracy within the meaning of § 3B1.2.   Obviously, if this claim were treated as a straight up due process/equal protection claim, it would likely be procedurally barred under *United States v. Frady*, 456 U.S. 152 (1982), because she does not show why it could not have been addressed on direct appeal.   The government will disregard those formalities here, though, and address the ineffective assistance of counsel claims referenced in the body of her argument.

bar issues in response to a defendant's § 2255 motion, the court is obliged to address that issue and, if appropriate, dispose of the case on that basis. *Id.* 16 F.3d at 379.

In order to establish "cause," a defendant must show that there existed some external impediment which prevented her from raising the claim during the original proceedings on her case, or on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). A defendant could show "cause" by demonstrating that her claim was so novel that its legal basis was not reasonably available to her counsel. *See Reed v. Ross*, 468 U.S. 1, 16 (1984). However, neither ignorance nor inadvertence is sufficient in this regard, nor does a failure to recognize the factual or the legal basis for the claim. *Id.*

A claim of ineffective assistance of counsel is another way a defendant may overcome the procedural bar rules in a § 2255 proceeding. The standards governing ineffective assistance of counsel claims are well known. To establish ineffective assistance of counsel, the defendant must show that her attorney's performance was deficient and that, but for that deficient performance, there is a reasonable probability that the outcome of a proceeding involving the defendant would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Haddock*, 12 F.3d 950, 955 (10th Cir. 1993). To prove that her lawyer's performance was deficient, the defendant must show that the attorney's performance was not within the wide range of competence demanded of attorneys in criminal cases. *Laycock v. State of New Mexico*, 880 F.2d 1184 (10th Cir. 1989).

The proper standard for measuring attorney performance is not that of perfection.  *United States v. Haddock*, 12 F.3d at 955-56.  Rather, it is that of reasonably effective assistance.  *Gillette v. Tansy*, 17 F.3d 308, 310-11 (10th Cir. 1994).  Moreover, as the Tenth Circuit noted in *Gillette*, a court's review of an attorney's performance is highly deferential and must be conducted, as much as possible, without regard to the often distorting effects of hindsight.  *Id.* at 311.

> Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.

*Id. quoting Strickland v. Washington*, 466 U.S. at 689.

To establish prejudice, a petitioner also has a difficult burden.  She must show more than a theoretical effect on the outcome of her case as a result of her attorney's errors.  Rather, she must show that, but for those errors, there is a reasonable probability that the results would have been different, *i.e.,* that she would have been acquitted, or that she would not have pleaded guilty, or that she would have received a more favorable sentence.  *Strickland v. Washington*, 466 U.S. at 694; *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1996).

Moreover, a defendant challenging her conviction on the basis of ineffective assistance of counsel must do more than simply offer conclusory allegations; she must make particularized and specific factual averments which, if proven, would demonstrate both the ineffectiveness of her

attorney's performance and the resulting prejudice to her case.  *Hatch v. State of Okla.*, 58 F.3d 1447,

1457 (10th Cir. 1995), overruled in part on other grounds by *Daniels v. United States*, 254 F.3d

1180, 1188 n.1 (10th Cir. 2001) (*en banc*); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir.

1994).  This requirement must be satisfied even where, as here, the defendant is proceeding *pro se*,

and notwithstanding the usual rule that *pro se* pleadings are to be liberally construed.  *United States*

*v. Fisher*, 38 F.3d at 1147.

 As measured against these standards, it is clear the Defendant's motion cannot be sustained.

**1. Failure to Challenge Drug Quantity**

 The Defendant's first claim is that her attorney was constitutionally ineffective for failing to

force the government to prove that her relevant conduct with respect to the drug conspiracy she

pleaded guilty to was 500 grams or more of methamphetamine.  This claim is meritless.

 First, as noted above, the Defendant stipulated that her relevant conduct involved 500 or

more grams of methamphetamine in her plea agreement (Doc. 347 at 4-5 [¶ 7(a)]).   More

importantly, during her change of plea hearing she testified under oath that (1) she signed the plea

agreement voluntarily and without coercion from anyone, and fully understood it when she signed

it (COP Tr. at 14-15), and (2) the amount of methamphetamine with which she was either involved

personally or which was foreseeable conduct of her co-conspirators was between 500 grams and 1.5

kilograms (*id.* at 29).  Such sworn, "[s]olemn declarations in open court carry a strong presumption

of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Moreover, the " 'truth and accuracy' of

a defendant's statements during the Rule 11 proceeding 'should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of [her] Rule 11 statements.' " *United States v. Weeks*, 653 F.3d 1188, 1205 (10th Cir. 2011) (*quoting Hedman v. United States*, 527 F.2d 20, 22 (10th Cir. 1975) (*per curiam*)).

In light of the Defendant's sworn testimony at her change of plea hearing that her "relevant conduct" involved more than 500 grams of methamphetamine, it is not immediately clear why her attorney should necessarily have challenged that amount as the basis for determining her base offense level under the Sentencing Guidelines. She surely does not illuminate that matter in her § 2255 papers. Moreover, a review of the relevant portion of the PSR shows that based on the proffer statements of several of the Defendant's co-conspirators, she was significantly involved in the drug conspiracy and was responsible for <u>at least</u> 1,275 grams of methamphetamine (PSR at 15-16 [¶¶ 16-18]). The Defendant does not suggest how her attorney would have overcome the force of those statements were he to have challenged the PSR's drug quantity determination, and no such strategy is apparent from the record.

In addition, requiring the government to prove drug quantity at sentencing would not only have violated the stipulation she made with the government in her plea agreement (and thus jeopardized her plea agreement), but it also could have negatively (from her perspective) impacted the government's decision about whether it would file a motion on her behalf under § 5K1.1 of the Guidelines and 18 U.S.C. § 3553(e). It was, of course, the government's § 5K1.1/§ 3553(e) motion

that permitted the court to sentence the Defendant to less than 120 months, the otherwise applicable mandatory minimum in her case pursuant to 21 U.S.C. § 841(b)(1)(A).

In light of all of the foregoing, it is clear that this record does not support a finding that Defendant's counsel performed wholly unreasonably in not "putting the government to its proof" in respect to the Defendant's "relevant conduct." Indeed, based on the record, it appears that such a challenge would not only have been futile, but likely would have been counterproductive as well, since it could have jeopardized both the Defendant's plea agreement and her § 5K1.1/§ 3553(e) motion. There is simply nothing in this record that could even conceivably overcome *Strickland's* presumption that counsel's performance was reasonable under the circumstances.

Moreover, the Defendant has also failed to show prejudice under *Strickland* on this issue. Indeed, at best she barely even alleges it (*see* Defendant's Memo at 9) (saying "she was substantially prejudiced sentencing" [sic]). But as noted above, to show prejudice a defendant must make specific, particularized factual averment which, if proven, would demonstrate that, but for her attorney's deficient performance, there is a reasonable probability that the results of her case would have been more favorable - conclusory allegations will simply not suffice. *Hatch*, 58 F.3d at 1457; *Fisher*, 38 F.3d at 1147. Plainly, other than vaguely "alleging" prejudice, the Defendant has wholly failed to assert any specific facts which would lead one to conclude that, had her lawyer only made a "drug quantity" challenge to the findings in the PSR, there would have been some reasonable chance of success. Indeed, based on the record presently before the court, it seems quite clear that

any such a challenge would have been both futile and, as noted above, possibly even damaging to the Defendant in the long run.

Given all the foregoing, the Defendant has utterly failed to satisfy either prong of *Strickland's* two part test for ineffective assistance of counsel on this issue.   Her claim must accordingly be rejected.

### 2.      Conflict of Interest

The Defendant's second claim is that her attorney had verbalized a bias against drug defendants, and thus had a conflict of interest which prevented him from adequately defending her. This claim is meritless.

Among other things, the Sixth Amendment encompasses a right on the part of an accused to representation by counsel that is free from conflicts of interest.  *Wood v. Georgia*, 450 U.S. 261, 271 (1981).  To succeed on a "conflict of interest" claim, the defendant must show that by virtue of the purported conflict, her counsel was forced to make choices advancing other interests to the detriment of his client.  *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998).  However, such a claim cannot succeed where it is supported only by vague and unsubstantiated allegations.  *Castro v. Ward*, 138 F.3d 810, 821 (10th Cir. 1998).  Rather, a defendant must show with specific averments that the alleged conflict of interest actually affected the adequacy of his representation.  *Id.  See also Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980).  And where a defendant fails to satisfy these requirements,

she must alternatively establish the ineffectiveness of her counsel under *Strickland's* test.   *See Mickens v. Taylor*, 535 U.S. 162, 166 (2002).

Measured against these standards, it is clear the Defendant's claim falls woefully short.  She has not established with specific factual allegations that her lawyer was operating under an "actual conflict of interest" that resulted in his having made "choices advancing other interests to the detriment of [the Defendant]."  *Alvarez*, 137 F.3d at 1252.  Indeed, while she claims her lawyer possessed some kind of bias *vis a vis* drug defendants, she has failed to allege <u>anything</u> by way of specifics with respect to how this alleged "bias" adversely affected her lawyer's representation of her.  For that reason, her "actual conflict of interest" claim must be rejected.  *Castro v. Ward*, 138 F.3d at 821; *see also Green v. Snedeker*, 355 Fed. Appx. 146, 150-51 (10th Cir. 2009).

Similarly, the Defendant has also failed to satisfy *Strickland* in regard to this claim.  Aside from her vague and conclusory assertion that her attorney had some sort of generalized bias in regard to drug defendants, the Defendant has wholly failed to suggest how this alleged bias actually adversely affected the quality of her lawyer's representation of her.  She has thus failed to overcome *Strickland's* strong presumption that counsel's representation was not unconstitutionally unreasonable.  And she has provided no specifics whatsoever with respect to how - or even with respect to whether - the outcome of her case might have been adversely affected.  Indeed, she does not allege *Strickland* prejudice at all.

In sum, the Defendant's conflict of interest claim is wholly insufficient, and it must accordingly be rejected.

3.      **"Recency" Points**

The Defendant's third claim is that her lawyer was constitutionally ineffective because he allowed her to be sentenced eighteen days before a Sentencing Guideline amendment was to become effective, which amendment - had it been applied to her - would allegedly have resulted in her criminal history score being reduced from five points to three points, and her Criminal History Category going from III to II (Defendant's Memo at 11-12). This claim is frivolous.

The Defendant is, of course, correct that the 2010 amendments to the guidelines removed the "recency" points from the calculation of a defendant's criminal history score. Prior to November 2010, § 4A1.1(e) (2009) of the guidelines added two points to a defendant's criminal history score if the defendant committed the crime at issue within two years of being released from imprisonment on a prior conviction. Because the Sentencing Commission ultimately concluded that this "recency" factor only minimally improved the ability of a defendant's criminal history score to predict his risk of recidivism, the Commission deleted this enhancement effective November 1, 2010. *See* U.S.S.G. Supp. to App. C, Amend. 742 (Nov. 1, 2010).

Unfortunately for the Defendant, none of this has anything whatsoever to do with her. She was not assessed "recency" points. Rather, her criminal history score was increased by two points because at the time she committed the offense at issue in this case, she was still on probation for her

August 2008 DWI conviction in Rock Springs, Wyoming (*see* PSR at 20 [¶ 42]).  That criminal history score enhancement - committing the offense of conviction while under any prior criminal justice sentence, including probation - remains a part of the Sentencing Guidelines today, and was not affected by the November 2010 amendments.  *See* U.S.S.G. § 4A1.1(d).

Because the legal/factual predicate for the Defendant's claim on this issue is simply wrong, her claim cannot be sustained.

### 4.        Due Process/Equal Protection

The Defendant's final argument is styled a "Due Process/Equal Protection" claim (Defendant's Memo at 13-18).  Were it a straight up, unadorned substantive due process or equal protection claim, it would be procedurally barred under *Frady*.  The actual substance of the Defendant's fourth claim, however, is that her lawyer was ineffective by not objecting to the drug quantity established for her in the PSR, and for not objecting to the PSR's determination not to award her a "minor role" adjustment under the guidelines (*see* PSR at 16 [¶ 19]) (explaining why Defendant not entitled to "minor role" adjustment).  The government has already dealt with the "drug quantity" issue in regard to her first claim for relief (*see supra*).  For that reason, we address here only the "minor role" issue under *Strickland's* framework for assessing ineffective assistance of counsel claims.  For the reasons noted below, the Defendant's claim cannot be sustained.

Substantively, § 3B1.2 provides a range of downward adjustments for a defendant who, while surely having been involved in an offense, was nonetheless substantially less culpable than the

average participant.  U.S.S.G. § 3B1.2, App. Note 3(A).  Whether a defendant qualifies for such an adjustment is a heavily fact-dependent question.  *United States v. Donaldson*, 915 F.2d 612, 615-16 (10th Cir. 1990).

The Defendant bears the burden of proof to affirmatively establish her entitlement to an adjustment under this provision.  *United States v. Virgen-Chavarin*, 350 F.3d 1122, 1130-31 (10th Cir. 2003).  To decide whether a defendant has satisfied her burden, the focus should be on the defendant's knowledge or lack of knowledge concerning the scope and structure of the enterprise and of the activities of others of its participants.  *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1277 (10th Cir. 2004).  A defendant is not entitled to a minor or minimal role reduction if she played a significant part in facilitating a drug conspiracy.  *Virgen-Chavarin*, 350 F.3d at 1131; *United States v. Ayers*, 84 F.3d 382, 384 (10th Cir. 1996) (a defendant is not eligible for an offense level reduction if she served "an important function" in a drug trafficking network (*quoting United States v. Montoya*, 24 F.3d 1248, 1249 (10th Cir. 1994)).  Moreover, a defendant's own assertion that she was a minimal or minor participant is not necessarily sufficient to satisfy her burden of proof.  *United States v. Eckhart*, 569 F.3d 1263, 1276-77 (10th Cir. 2009); *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1278 (10th Cir. 2004).

In this case, the Defendant claims, without much in the way of specifics, that her attorney was ineffective for not challenging the PSR's determination that she was not eligible for a "minor role" adjustment.  What she says in support of her position is this:

The most predominant characteristic that the Pre-sentence Report does not reflect is the fact that the Movant's role in the offense is not properly assessed. Movant Stassinos was a minor participant in the offense of conviction. There is nothing to reflect that she possessed any methamphetamine, exercised any authority over any methamphetamine drugs, that she had any investment in any methamphetamine, or that she stood to make a profit from the sale of any methamphetamine. The circumstances surrounding her involvement with some of the individual's names in the conspiracy are not drug related. Some of the individuals she never met or knew. The length of time she was involved with a semi-circle of the individuals was very short and her knowledge of their involvement with drugs limited. She clearly qualified for a downward departure from the guidelines for her role in the offense.

(Defendant's Memo at 14).

That is all.

The problems with her position are obvious. First, as we note above, a defendant's unadorned assertions, without more, are not necessarily sufficient to satisfy her burden of proof with respect to a § 3B1.2 adjustment. *Eckhart*, 569 F.3d at 1276-77. Second, and more significantly, the evidence concerning the Defendant's level of involvement in this drug conspiracy, as described by the PSR, paints a vastly different portrait of her participation than that reflected above in her Memorandum. For example, whereas in her Memorandum she says there is "nothing to reflect that she possessed any methamphetamine, exercised any authority over any methamphetamine drugs, that she had any investment in any methamphetamine, or that she stood to make a profit from the sale of any methamphetamine" (Defendant's Memo at 14), the facts as stated in the PSR show that the Defendant was indeed a significant participant in this methamphetamine conspiracy. According to Karen Souza, the conspiracy's principal methamphetamine source in Utah (along with her husband),

the Defendant made <u>at least</u> twenty trips, by herself, to obtain methamphetamine from her, usually

in one ounce quantities (PSR at 16 [¶ 17]).   In addition, Ms. Souza indicated the Defendant made

as many as thirty additional trips to obtain methamphetamine from her with Jozette Arnoldi (*id.*).

Jozette Arnoldi confirmed much of that, indicating that she and the Defendant and, sometimes,

Thayne Arnoldi, made trips to Utah every two or three days between May and July, 2009 (*id.* [¶ 16]).

On those trips, they apparently obtained from one ounce of methamphetamine to as much as three

to four ounces (*id.*).   Kelsey Bolding, another witness, indicated she gave the Defendant $1,000 on

two occasions so that the Defendant could purchase one-half ounce of methamphetamine for her

(PSR at 15 [¶ 14]).   And Thayne Arnoldi stated that he had used the Defendant's vehicle to travel

to Utah to obtain methamphetamine, and that he knew the Defendant had traveled several times to

Utah with Jozette Arnoldi to obtain methamphetamine (*id.* at 16 [¶ 15]).

 In light of the foregoing, it is difficult to imagine how Defendant's counsel performed in an

entirely unreasonable manner by not challenging the PSR's conclusion that the Defendant was not

entitled to a "minor role" adjustment.   So far as the Defendant has indicated, the only evidence she

would have been prepared to offer in order to carry her burden of proof on this issue is her own

testimony.   As noted above, a defendant's own testimony that she was a minor participant may not

be sufficient to carry the day on the issue, "even where it is uncontradicted by other evidence."

*Salazar-Samaniega*, 361 F.3d at 1278.   But here, the Defendant's minimalist description of her

involvement in this conspiracy is obviously substantially contradicted by the whole of the

statements/proffers of her co-conspirators. And those statements, which indicated that the Defendant made multiple trips to Utah to obtain ounce or larger quantities from Karen Souza, both by herself and with others such as Thayne Arnoldi, Craig Stephens, and especially Jozette Arnoldi, were entirely consistent with and corroborative of one another.

If one were to credit the several statements of these various co-conspirators, there can be little doubt that the Defendant's role could not fairly be described as "minor" within the meaning of § 3B1.2. A defendant who plays a "significant role" in facilitating a drug trafficking scheme - by, for example, delivering significant amounts of methamphetamine or cash - is not qualified for a "minor role" adjustment. *Virgen-Chavarin*, 350 F.3d at 1130-31. Likewise, it is hardly a stretch to suggest that a defendant who makes thirty plus road trips to secure ounce or multi-ounce quantities of methamphetamine in order to feed the demands of the organization's customers is clearly not a "minor participant." *See, eg., Virgen-Chavarin*, 350 F.3d at 1130-31; *see also United States v. Morgan*, 264 Fed. Appx. 701, 706 (10th Cir. 2008) (defendant involved in possessing or selling considerable amount of methamphetamine not "minor participant"); *United States v. Garcia-Cardenas*, 242 Fed. Appx. 579, 581-82 (10th Cir. 2007) (defendant who on multiple occasions transported methamphetamine on behalf of conspiracy is not entitled to § 3B1.2 adjustment).

Now obviously, how the district court might have decided this question had Defendant's counsel actually pursued it would ultimately have depended on whether the court found the Defendant more credible, or whether it instead believed the very different statements of the

Defendant's co-conspirators.  It is impossible to say <u>for sure</u> how that credibility choice would have been resolved by the court.  But it would <u>at least</u> seem highly unlikely that the court would have chosen to believe the Defendant's uncorroborated and self-serving story that she was only tangentially a part of this conspiracy over the fully corroborated and wholly consistent statements of Cami Braden, Kelsey Bolding, Craig Stephens, Thayne Arnoldi, Jozette Arnoldi, and Karen Souza, all of which plainly showed that the Defendant was in fact a very significant participant, at least between May 2009 and October 2009.

A defendant's lawyer does not act in an entirely unreasonable manner by failing to pursue a claim with little or no likelihood of being successful.  *See United States v. Orange*, 447 F.3d 792, 797 (10th  Cir. 2006) (failure to raise non-meritorious issue is non-prejudicial and thus not ineffective assistance under *Strickland*).  More importantly, to be successful on this ineffective assistance of counsel claim, the defendant must show that, had her lawyer only raised the "minor role" issue, there is a reasonable probability that the outcome of her sentencing would have been different; *i.e.,* a reasonable probability that she would have been awarded a "minor role" adjustment.

In light of the record in this case, the likelihood that the Defendant's case for a "minor role" adjustment could ever have been successful seems fanciful at best.  Such a fanciful prospect for success plainly does not satisfy *Strickland's* standard for prejudice.

For all the foregoing reasons, the Defendant's claim that her lawyer was constitutionally ineffective for not having pursued for her a "minor role" adjustment is plainly without merit, and it must accordingly be rejected.

<u>**CONCLUSION**</u>

For all the foregoing reasons, the Defendant's motion under 28 U.S.C. § 2255 must be denied.  Moreover, because each of her claims is fully resolvable on the basis of the record that already exists, there exists no basis for convening an evidentiary hearing on any of her claims.

**DATED** this 21st day of November, 2011.

Respectfully submitted,

CHRISTOPHER A. CROFTS
United States Attorney


By: _____
DAVID A. KUBICHEK
Assistant United States Attorney

## CERTIFICATE OF SERVICE

This is to certify that on this 21st day of November, 2011, I served a true and correct copy

of the foregoing **United States' Response to the Defendant's Motion to Vacate Her Sentence**

**Under 28 U.S.C. § 2255** upon the following by depositing the same, postage prepaid, in the United

States mail, addressed to:

> **Teya Stassinos #11488-091**
> FCI Dublin
> Federal Correctional Institution
> 5701 8th Street - Camp Parks
> Dublin, CA  94568

 

 

_____
UNITED STATES ATTORNEY'S OFFICE