IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

FEB 16 2012

Stephan Harris, Clerk
Cheyenne

| | |
|---|---|
| TEYA STASSINOS,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Criminal Case No. 09-CR-354-D<br><br>Civil Case No. 11-CV-313-F |

## ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

This matter is before the Court on Defendant/Petitioner Teya Stassinos ("Petitioner")

Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence by A Person in

Federal Custody.

### BACKGROUND

On March 17, 2010, Ms. Stassinos was charged in a superseding indictment with

conspiracy to traffic in methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)

and 846. (Docket Report for Docket No. 09-CR-354-D, Doc. #171)(hereinafter "Doc.

# __"). Ms. Stassinos originally pled not guilty to this charge. (Doc. #223). Then on July

30, 2010, Ms. Stassinos entered into a Plea Agreement with the Government. ( Doc. #347). Pursuant to the Plea Agreement, Ms. Stassinos agreed to plead guilty to Count One of the Superceding Indictment.  (Doc. #347 at p. 2).  She was required to cooperate with and provide substantial assistance to the United States. (Doc. #347 at pp. 6-7).  The Plea Agreement provided that Ms. Stassinos would stipulate that her relevant conduct for purposes of determining her base offense level under the Sentencing Guidelines was between 500 grams and 1.5 kilograms of methamphetamine. (Doc. #347 at pp. 4-5).  The Plea Agreement noted that Ms. Stassinos would seek a downward departure in her criminal history score  and the parties anticipated that Defendant may be eligible for a two (2) level minor role adjustment under § 3B1.2 if sustained by U.S. Probation. (Doc. #347 at pp. 4-5).

In exchange, the Government agreed to recommend Ms. Stassinos receive a three offense level adjustment under § 3E1.1 of the Guidelines to reflect her acceptance of responsibility. (Doc. #347 at pp. 7-8).  The Government also agreed to file a motion on Ms. Stassinos' behalf under § 5K1.1 and/or 18 U.S.C. § 3553(e), if it determined that Defendant fully, completely and truthfully cooperated with the United States. (Doc. #347 at p. 8). Finally, the Government agreed to recommend Ms. Stassinos receive a sentence at the low end of the applicable sentencing guideline range. (Doc. #347 at pp. 4-5).

Ms. Stassinos changed her plea on August 4, 2010.  (Doc. #366).  Ms. Stassinos'

change of plea hearing was conducted by Magistrate Shickich, pursuant to a wavier of guilty

plea and consent to plea before Magistrate Judge.  (Doc. # 367).  At that hearing, Ms.

Stassinos was placed under oath and asked a series of questions to ensure she was competent

to go forward.  (Doc. #481 [Change of Plea (COP) Tr.] at pp. 1-3).  The Court explained the

statutory penalties connected to her charge.  (Doc. #481 at pp. 4-5).  The Court also

confirmed that Ms. Stassinos had gone over the charges with her attorney and that she did

not have any questions. (Doc. #481 at p. 5).  The Court explained that it was not party to the

Plea Agreement and that the sentencing judge would not be bound by the plea.  (Doc. #481

at p. 5).  Ms. Stassinos stated that she understood.  (Doc. #481 at p. 6).

The Court went through the terms of the plea, including the relevant conduct and

further explained that Ms. Stassinos reserved the right to argue her relevant conduct and her

role in the conspiracy at sentencing.  (Doc. #481 at pp. 9-10).  Ms. Stassinos confirmed that

she read and understood the Plea Agreement, that no one had made any promises, other than

those contained in the Plea Agreement, and that she signed the Plea Agreement voluntarily.

(Doc. #481 at pp. 14-15).

The Court explained the process for sentencing in Federal Court.  (Doc. #481 at pp.

15-16).  Ms. Stassinos was advised that she faced a mandatory minimum 120 month

sentence, but that it was possible she could receive a 5K1from the Government, then she would be looking at a sentence in the range of 78 to 97 months. (Doc. #481 at pp. 16-17). Ms. Stassinos stated that she understood the possible consequences and that she understood her sentence would be determined by the sentencing judge. (Doc. #481 at p. 17).

The Court then went through the constitutional rights that Ms. Stassinos was giving up by pleading guilty. (Doc. #481 at pp. 17-19). Ms. Stassinos confirmed that she understood the rights she was giving up and that she wanted to go forward with a guilty plea. (Doc. #481 at p. 19). The Court then walked Ms. Stassinos through the factual basis supporting her guilty plea.

Ms. Stassinos stated that her involvement with the conspiracy began in Rock Springs, Wyoming around June of 2009. (Doc. #481 at p. 20). She provided that her role in the conspiracy was that she paid a drug debt for Jozette Arnoldi, that she was present when Jozette Arnoldi purchased methamphetamine. (Doc. #481 at pp. 20-21). Ms. Stassinos also provided Ms. Arnoldi with a car in order for Ms. Arnoldi to obtain drugs. (Doc. #481 at p. 23). Ms. Stassinos also stated that she took Ms. Arnoldi to Utah to pick up drugs. (Doc. #481 at p. 23). Ms. Stassinos also admitted that she provided Craig Stephens with drugs. (Doc. #481 at pp. 24-25). Ms. Stassinos provided other information regarding her involvement in the drug conspiracy. (Doc. #481 at pp. 27-25). Based on Ms. Stassinos'

4

factual assertions, the Court accepted her change of plea from not guilty to guilty.  (Doc.

#481 at pp. 30-31).

The Court ordered the preparation of a presentence report (PSR), which was

completed on September 10, 2010. (PSR at p. 1).  In terms of Ms. Stassinos' conduct in the

conspiracy, the PSR at Paragraphs 14-18 states:

> 14. A Confidential Informant stated he knew the defendant made trips to Utah
> and sold methamphetamine for Jozette Arnoldi. Cami Braden stated she
> introduced the defendant and others to Karen and Kenny Souza. Kelsey Bolding
> stated she gave $1,000 to the defendant on two occasions for the defendant to
> purchase methamphetamine for her. Both times, the defendant brought back a
> half ounce of methamphetamine for her, which totals one ounce of
> methamphetamine.
>
> 15. On July 28, 2009, Craig Stephens stated on one occasion, he, the defendant,
> J. Arnoldi and others, all traveled to Utah together. They obtained one and a
> quarter ounces of methamphetamine from the Souzas. Thayne Arnoldi stated
> he used the defendant's car to travel to Utah to obtain methamphetamine.
> Further, he related knowing the defendant traveled several times to Utah with
> J. Arnoldi to obtain and sell methamphetamine.
>
> 16. Jozette Arnoldi stated she traveled with the defendant on three occasions,
> obtaining three ounces of methamphetamine each time. Further, she knew the
> defendant had traveled by herself on two occasions, obtaining an ounce of
> methamphetamine each time. J. Arnoldi estimated from May to June 2009, the
> defendant, along with others, traveled to Utah every two days to obtain at least
> an ounce of methamphetamine each time. Further, from June to July 2009, the
> defendant, Thayne Arnoldi, and J. Arnoldi, traveled to Utah approximately
> three times a week obtaining between three and four ounces. Therefore, giving
> the defendant the benefit of the doubt a total of 30 ounces or 850.5 grams of
> methamphetamine can be attributed to the defendant.

17. Karen Souza stated the defendant came to Utah at least 20 times, by herself, to obtain methamphetamine. On fifteen of these occasions she received an ounce of methamphetamine and the other five times it is unclear the amount received. Further, there are no amounts associated with the trips for the 30 times the defendant made to Utah with J. Arnoldi to obtain methamphetamine from Souza. This totals 15 ounces, however, some of these amounts may be accounted for in the statements of Kelsey Bolding and Craig Stephens. Therefore, deducting the two and a quarter ounces in their statements, it leaves 12 3/4 ounces or 361.4 grams of methamphetamine can be attributed to the defendant.

18. A[ll] totaled defendant's relevant conduct is 1,275.6 grams or 1.275 kilograms of methamphetamine, which falls within the stipulated relevant conduct of more than 500 grams, but less than 1.5 kilograms, establishes a base offense level of 32.

(PSR at pp. 15-16).

Based on Ms. Stassinos' conduct, the PSR concluded that Ms. Stassinos was not eligible for a "minor role" adjustment because she "knew the scope and structure of the [methamphetamine] enterprise as well as the activities of others involved," and "[s]he is no less culpable than most of her co-conspirators." (PSR at p. 16). The PSR determined Ms. Stassinos' base offense level was 32 pursuant to U.S.S.G. § 2D1.1(c)(5), based on relevant conduct of 1.275 kilograms of methamphetamine. (PSR at p. 17). Ms. Stassinos received a three level adjustment for acceptance of responsibility under § 3E1.1, bringing her total offense level to 29. (PSR at p. 17).

For her criminal history, Ms. Stassinos had one point for an August 2008 "DWI" conviction in Rock Springs, Wyoming, one point for a November 2009 conviction in Utah for unlawful possession of a controlled substance, and one point for a February 2010 conviction in Sweetwater County, Wyoming for unlawful possession of a controlled substance. (PSR at pp. 18-19). Ms. Stassinos received an additional two points because during the period she was involved in the methamphetamine conspiracy, she was still on probation for her August 2008 "DWI" conviction in Rock Springs, Wyoming. (PSR at p. 20). In total, Ms. Stassinos' Criminal History was a Category III. (PSR at p. 20). Based on a total offense level of 29 and a Criminal History Category III, her initial sentencing guideline range was 108 to 135 months, which was raised to 120 to 135 months under U.S.S.G. § 5G1.1(b), because of the 120 month mandatory minimum required by 21 U.S.C. § 841(b)(1)(A). (PSR at p. 23).

The PSR was circulated to the parties for comments and objections. Ms. Stassinos had one substantive objection, that she should not have been assigned criminal history points for her 2009 and 2010 state controlled substances convictions, because the conduct underlying those offenses constituted relevant conduct for her methamphetamine conspiracy conviction in this case. (PSR addendum at p. i). Probation responded that the controlled substances at issue in those cases were, respectively, prescription pills and MDMA (Ecstasy),

7

while the Superceding Indictment concerned only methamphetamine. (PSR addendum at p.

i).

Ms. Stassinos filed a sentencing memorandum requesting a sentence of no more than

70 months. (Doc. #420). Ms. Stassinos acknowledged that a 70 month sentence might be

below the final guideline range, but was justified based on the sentencing factors listed in 18

U.S.C. § 3553(a).

Ms. Stassinos appeared for sentencing on October 13, 2010. (Doc. #426). The Court

first considered Ms. Stassinos' objections to her criminal history calculation. (Doc. #482

[Sentencing Tr.] at p. 3). The Court heard argument from both parties and removed one point

from Ms. Stassinos' criminal history calculation for her October 2009 MDMA conviction,

but rejected her argument on the one point assessed in connection with her June 2009 Utah

drug possession conviction. (Doc. #482 at pp. 15-16). The Court recalculated Ms. Stassinos'

criminal history to two points, then added two additional points under U.S.S.G. § 4A1.1(2)

because the instant offense was committed while Ms. Stassinos was on probation for her

2008 DWI conviction. (Doc. 482 at p. 16). With a total of four criminal history points, Ms.

Stassinos remained in criminal history category III which, when combined with her total

offense level of 29, produced a guideline range of 120 to 135 months. (Doc. #482 p. at 16).

The Court then considered the Government's motion under § 5K1.1 of the guidelines

to account for her cooperation with the government. (Doc. #482 at p. 17). The Government outlined Ms. Stassinos' cooperation and assistance and recommended a three level downward departure. (Doc. #482 at pp. 17-19). With the recommended departure, Ms. Stassinos' base offense level went to a 26 and her guideline range dropped to 78 to 97 months. (Doc. 482 at p. 18). After the Government's 5K1 motion, Ms. Stassinos argued that she should receive an additional one level variance in view of how the sentencing factors set forth in 18 U.S.C. § 3553(a) applied in this case, for an offense level of 25 and a sentence of 70 months. (Doc. #482 at pp. 18-24). The Government objected to the variance. In stating sentence, the Court granted the Government's § 5K1.1 motion for a three level downward departure and also granted Ms. Stassinos' motion for an additional one level variance, for a final guideline range of 70 to 87 months. (Doc. 482 at p. 29). The Court sentenced Ms. Stassinos to a low end sentence of 70 months imprisonment, five years supervised release, and a $500 fine. (Doc. #482 at pp. 31-35).

The criminal judgment incorporating sentence was filed on October 15, 2010. (Doc. #428). Ms. Stassinos did not file an appeal. Her time for doing so would have expired fourteen days later, on October 29, 2010. See Rule 4(b), Fed. R. App. P. Ms. Stassinos filed her motion on October 5, 2011, therefore it is timely for purposes of applying § 2255's one year limitation period. See *United States v. Prows*, 448 F.3d 1223, 1227-28 (10th Cir. 2006)

(absent an appeal, a criminal conviction becomes final for purposes of § 2255's one year

limitation period when the time for taking a direct criminal appeal expires).

## DISCUSSION

In her motion for relief, Ms. Stassinos claims that her counsel was ineffective because

he failed to advocate on her behalf by not challenging the 500 grams of methamphetamine

for which she was ultimately held accountable at sentencing.   Ms. Stassinos also claims her

counsel was ineffective because he made negative comments about defendants charged with

drug offenses and had thus reflected a bias against them.   Ms. Stassinos also claims

ineffective assistance of counsel  because her counsel did not seek to move her sentencing

until after November 1, 2010, when new guidelines came into effect eliminating the

provision in former USSG § 4A1.1(e)(2009), which added two criminal history points for

"recency" - i.e., accounting for the fact that a defendant's instant conviction occurred within

two years of a previous offense.   Ms. Stassinos also claims she was denied due process and

equal protection by the Court's failure to comply with Fed. R. Crim. P. 32. The Court will

construe this as a claim that her counsel was ineffective because he did not challenge the

PSR's determination that she had not been a "minor" or "minimal" participant in the drug

conspiracy and did not challenge the 500 + gram drug quantity assigned to her in the PSR.

In her reply, Ms. Stassinos appears to assert a claim regarding the voluntariness of her plea agreement, although Ms. Stassinos' primary focus is matters related to her sentencing.

Section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). The standard of review applied to § 2255 motions is stringent. "Only if the violation constitutes a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure can § 2255 provide relief." *United States v. Gordon,* 172 F.3d 753, 755 (10th Cir. 1999) (internal quotations omitted). The Court presumes the proceedings which led to defendant's conviction were correct. *See Parke v. Raley,* 506 U.S. 20, 29-30 (1992).

"Section 2255 is not available to test the legality of matters which should have been raised on appeal." *U.S. v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994). This rule applies even when the appeal has been waived. See *U.S. v. Frady*, 456 U.S. 152, 154 (1982). "A defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless [s]he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will

11

occur if h[er] claim is not addressed." *Allen,* 16 F.3d at 378.  "[I]f the government raises

procedural bar, the courts must enforce it and hold the defendant's claims procedurally barred

unless cause and prejudice or a miscarriage of justice is shown." *Id.*

"A defendant may establish cause for h[er] procedural default by showing that [s]he

received ineffective assistance of counsel in violation of the Sixth Amendment." *U.S. v.

Cook*, 45 F.3d 388, 392 (10th Cir. 1995)(citations omitted).  "To establish a claim for

ineffective assistance of counsel, a defendant must show that (1) h[er] counsel's performance

was constitutionally deficient, and (2) counsel's deficient performance was prejudicial." *Id.*

(citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  Counsel's performance is

deficient if the representation "falls below an objective standard of reasonableness."

*Strickland* at 690.  Prejudice is "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"In analyzing whether counsel's alleged errors prejudiced petitioner, [the Court] must

keep in mind the standard to be applied in assessing whether petitioner is entitled to an

evidentiary hearing in federal court on h[er] ineffectiveness claim. First, the petitioner bears

the burden of alleging facts which, if proved, would entitle h[er] to relief. Moreover, h[er]

allegations must be specific and particularized; conclusory allegations will not suffice to

warrant a hearing." *Hatch v. State of Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995)

12

(overruled on other grounds by *Daniels v. U.S.*, 254 F.3d 1180, 1188 n.l (10th Cir. 2001))

(citations and quotations omitted).

### 1.    Failure to Challenge Drug Quantity

Ms. Stassinos claims that her counsel was ineffective for failing to make the Government prove her involvement in the conspiracy was 500 grams or more of methamphetamine. The Court does not find that the record supports this claim. Ms. Stassinos signed a Plea Agreement, acknowledging that during the conspiracy she possessed with intent to distribute, knew or it was reasonably foreseeable to her that her co-conspirators possessed with intent to distribute or distributed at least 500 grams but not more than 1.5 kilograms of a mixture or substance containing a detectable amount of methamphetamine. (Doc. 347 at pp. 4-5). During the change of plea hearing Ms. Stassinos was placed under oath and the Magistrate Judge explained that Ms. Stassinos had to provide truthful information, that she could be prosecuted for perjury for making false statements and that it could potentially jeopardize her plea agreement if she were untruthful. (Doc. #481 at pp. 3-4). The Court explained the charge in the indictment and the possible punishments. Ms. Stassinos confirmed that she had gone over these charges with her counsel and that all her questions regarding the charges had been answered by her counsel. (Doc. #481 at pp. 4-5). The Court specifically asked Ms. Stassinos if she understood that she was agreeing she was

part of a conspiracy that involved 500 grams to 1.5 kilograms of a substance containing methamphetamine and Ms. Stassinos confirmed that she did. (Doc. #481 at p. 13). Ms. Stassinos also stated that she had signed the Plea Agreement and that she read and reviewed the document and that she was able to have any questions about the document answered. (Doc. #481 at p. 14). Ms. Stassinos stated that the plea was voluntary and that no one forced her to sign it against her will. (Doc. #481 at pp. 14-15).

Additionally at her sentencing, Ms. Stassinos was asked if she had an adequate opportunity to read the PSR and Ms. Stassinos stated that she had. (Doc. #482 at p. 2). At that time there were no objections to the quantity calculations in the PSR, only objections related to Ms. Stassinos' criminal history calculation. (Doc. #482 at pp. 16-17). At no time did Ms. Stassinos seek to withdraw her plea based on incorrect drug quantities.

Given that Ms. Stassinos pled to the quantities involved in the conspiracy of 500 grams but not more than 1.5 kilograms of a substance containing methamphetamine, there is no basis for her claim that her attorney should have challenged the amounts. While Ms. Stassinos implies in her motion and reply that she was somehow coerced into accepting the Plea Agreement, these allegations are in contradiction to her sworn testimony at the change of plea hearing. Additionally, Ms. Stassinos has not offered any evidence that her relevant conduct was lower than stated in the PSR, except to say that the numerous statements of her

14

co-conspirator and others included in her PSR overstated her involvement and makes blanket

statements that she was not involved in the alleged drug quantities.  Ms. Stassinos claims that

if her counsel had investigated the facts surrounding her case, he would have found that Ms.

Stassinos' involvement was not as represented.  Despite Ms. Stassinos' argument, reliable

hearsay statements of co-conspirators concerning her role in the conspiracy can be considered

by the Court.

Ms. Stassinos also asserts that her attorney could have, but did not provide available

and persuasive authority to support getting her a mitigating role in the conspiracy and

incorrect attribution of drugs.  However, Ms. Stassinos does not cite to any such authority

herself that would have supported this argument.  Additionally, Ms. Stassinos does not

suggest how her attorney would have been successful in overcoming the statements of her

co-conspirators to challenge the quantities in the PSR.  Given that Ms. Stassinos proffered

in this case and received a 5K1 reduction for her assistance, it is possible that any attempt by

her counsel to challenge the drug quantities could have jeopardized that motion.  This is

especially important because it was the Government's 5K1 motion that allowed the Court to

sentence Ms. Stassinos below the 120 month mandatory minimum imposed by 21 U.S.C. §

841(b)(1)(A).

Based on the record, there is no basis for asserting that Ms. Stassinos' counsel was ineffective by failing to hold the Government to the required level of proof as to the amount of drugs attributed to Ms. Stassinos. Additionally, Ms. Stassinos has failed to show how she was prejudiced under *Strickland*. Ms. Stassinos is required to provide specific, particularize allegations, that if proven, would demonstrate that but for her attorney's ineffective performance, the outcome would have been more favorable. Allegations must be specific and particularized; conclusory allegations will not suffice to warrant a hearing." *Hatch*, 58 F.3d at 1457.

Ms. Stassinos makes many assertions in her supplemental affidavit attached to her Reply. First, the Court would note that this affidavit is not a sworn affidavit, therefore, the Court need not even consider it. However, even if the Court were to consider the statements, they do not provide specific allegations that if proven would show prejudice.

Finally, Ms. Stassinos also states in her Reply that the Government has included extra-record materials and therefore an evidentiary hearing is required. The Court has read the Government's response and did not see any extra-record materials cited by the Government. Additionally, the Court has not relied on any extra-record materials in determining this case. Therefore, the Court finds that Ms. Stassinos' allegation has no merit.

### 2.    Conflict of Interest

Ms. Stassinos also claims that her attorney had stated a bias against drug defendants and therefore had a conflict of interest which prevented him from effectively defending her. The Sixth Amendment provides that a criminal defendant shall have the right to effective assistance of counsel. This right is "not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648, 658,(1984). "Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *Id*. (citations omitted). "Moreover, because we presume that the lawyer is competent to provide the guiding hand that the defendant needs, the burden rests on the accused to demonstrate a constitutional violation." *Id*. (internal citation omitted).   Ms. Stassinos did not raise conflict of interest issue prior to this motion.  Therefore, to  establish a violation of the Sixth Amendment violation she must demonstrate that an actual conflict of interest adversely affected her lawyer's performance. *Cuyler v. Sullivan*, 466 U.S. 355, 348-349 (1980).  Where a defendant fails to establish an actual conflict of interest, she can alternatively establish the ineffectiveness of her counsel under the *Strickland* test.  See *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).

In this case, Ms. Stassinos generally alleges that her attorney had a bias because of her drug crime.  Ms. Stassinos has not alleged how any such bias affected her attorney's representation of her.  Therefore, Ms. Stassinos has failed to state a claim for an actual conflict of interest.

Ms. Stassinos has also failed to establish that her counsel was ineffective under *Strickland*.  Ms. Stassinos does not provide specific information regarding how her case was adversely affected.  Therefore, the Court finds that Ms. Stassinos has failed on her conflict of interest claim.

### 3.    "Recency" Points

Ms. Stassinos' third claim is that her counsel was constitutionally ineffective because he did not ask for a continuance of her sentencing to allow a new Sentencing Guideline to become effective.  Ms. Stassinos incorrectly claims that if this change in the guideline would have been applied to her, her criminal history would have been reduced from 4 points to 2 points, which would have put her at a Criminal History Category II, rather than III.  This claim is without legal support.

The 2010 amendments to the guidelines removed the "recency" points from the calculation of a defendant's criminal history score. Prior to November 2010, § 4A1.1(e) of the guidelines added two points to a defendant's criminal history score if the defendant

18

committed the crime at issue within two years of being released from imprisonment on a prior conviction. The Sentencing Commission concluded that this "recency" factor only minimally improved the ability of a defendant's criminal history score to predict his risk of recidivism, the Commission deleted this enhancement effective November 1, 2010. See USSG Supp. to App. C, Amend. 742 (Nov. 1, 2010).

However, Ms. Stassinos was not assessed "recency" points. Her criminal history score was increased by two points because at the time she committed the offense at issue, she was still on probation for her August 2008 DWI conviction in Rock Springs, Wyoming. That enhancement, committing the offense of conviction while under any prior criminal justice sentence, including probation, is still a part of the Sentencing Guidelines and was not affected by the November 2010 amendments. See USSG § 4A1.1(d). Therefore, this allegation does not provide any basis for an ineffective assistance of counsel claim.

### 4. Denial of Due Process/Equal Protection

Ms. Stassinos' fourth claim is styled as a denial of due process and equal protection alleging the District Court failed to comply with Rule 32 of the Federal Rules of Criminal Procedure. This claim is slightly confusing because Ms. Stassinos goes back and forth between the PSR not reflecting her role as a minor participant in the underlying drug conspiracy to allegations that her plea was not voluntary. Ms. Stassinos claims that she was

19

adamant about pleading only to the amount of drugs that she was aware of through accomplice attribution, which was approximately 50 grams, but that her counsel insisted that she stipulate to the amounts at sentencing.  Ms. Stassinos asserts that her counsel sought to dispose of the case in the most expeditious manner possible.  Ms. Stassinos states that incorrect information was provided in the PSR.  Ms. Stassinos further argues that she was advised by counsel not to read certain relevant portions because it would anger her.  Ms. Stassinos alleges that she did not read the portions regarding statements that co-conspirators and others made against her.  Rather than a claim of violation of due process, the Court considers this as a claim of ineffective assistance of counsel for not objecting to the drug quantities in the PSR and not objecting the PSR's determination not to award Ms. Stassinos a "minor role" adjustment.

First, the Court is not persuaded by Ms. Stassinos' claims that she did not fully read the PSR and that her counsel did not properly object to her co-conspirators' allegations regarding Ms. Stassinos' involvement.  As previously discussed, at her sentencing, Ms. Stassinos was asked if she had an adequate opportunity to read the PSR and Ms. Stassinos stated that she had.  (Doc. #482 at p. 2).  At that time there were no objections to the quantity calculations in the PSR, only objections related to Ms. Stassinos' criminal history calculation.  (Doc. #482 at pp. 16-17).  At no time did Ms. Stassinos seek to withdraw her plea based on

20

incorrect drug quantities in the PSR.  Ms. Stassinos has not stated how her counsel should

have argued that the statements of her co-conspirators were not true or what evidence was

available to dispute those statements.   Essentially, all Ms. Stassinos has offered is her

statement that those amounts were overstated.   There is no reason for this Court to believe

that by arguing drug quantities, there is a reasonable likelihood that Ms. Stassinos would

have been successful in getting either her drug quantities or participation level decreased.

Ms. Stassinos also asserts that her counsel was ineffective for not seeking a "minor

role" adjustment.   The "minor role" adjustment provides a downward adjustment for a

defendant that was involved in the offense, but was substantially less culpable that the

average participant.  USSG § 3B1.2 Note 3(A).  A defendant has the burden of proving by

the preponderance of the evidence a minor role adjustment is proper under USSG § 3B1.2(b).

*United States v. Martinez,* 512 F.3d 1268, 1275 (10th Cir. 2008).   The determination of

whether to apply the adjustment is heavily dependent on the facts in the case.   *U.S. v.*

*Eckhart*, 569 F.3d 1263, 1276 (10th Cir. 2009).   A minor role adjustment turns on the

defendant's culpability relative to other participants in the crime.  *Id.*

In this case, despite the statements of Ms. Stassinos that she had a minimum role, her

PSR indicated that she had a much higher involvement in the drug conspiracy.   The PSR

reports that Kelsey Bolding stated that she gave Ms. Stassinos $1000.00 on two occasions

to purchase methamphetamine and that on both occasions Ms. Stassinos returned with a half ounce of methamphetamine. (PSR at p.16). The PSR also contains statements that Ms. Stassinos made multiple trips to Utah to obtain methamphetamine, either with others or by herself. *Id*. Karen Souza, the drug supplier in Utah, asserted that Ms. Stassinos came to Utah at least 20 times by herself to get methamphetamine and that on at least 15 of these occasions she received an ounce of methamphetamine. *Id*. The PSR concluded that Ms. Stassinos did not deserve a mitigating role because she was an active member of the conspiracy, that she knew the scope and the structure of the enterprise and the activities of others involved. *Id*.

Considering the information from multiple sources regarding Ms. Stassinos' role in this offense, it was not unreasonable for Ms. Stassinos' counsel not to challenge the PSR's findings. The only supporting evidence Ms. Stassinos has for her role in this conspiracy would be her own testimony. In this case, Ms. Stassinos' claim that she had a very minimal role is contradicted by statements and proffers of her co-conspirators and others. There is no reason for this Court to believe that the sentencing judge would have believed the statements of Ms. Stassinos over these other statements. In fact, reviewing the entirety of the sentencing transcript, it does not seem at all likely that the sentencing judge would have looked favorably on such an argument. For these reasons the Court finds that even if her attorney had raised this argument, it is not likely that it would have been successful.

## CONCLUSION

For all the above stated reasons, Ms. Stassinos' § 2255 motion is without merit and is DENIED. The files and record in this case conclusively establish that Ms. Stassinos is not entitled to any relief. Accordingly, no evidentiary hearing is required. *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988)(no hearing required where § 2255 motion may be resolved on review of record before the Court).

A certificate of appealability (COA) may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth above, Ms. Stassinos cannot make the required showing and a COA should not issue in this action.

IT IS ORDERED that Ms. Stassinos' Motion Under 28 U.S.C. § 2255 is DENIED;

IT IS FINALLY ORDERED that a certificate of appealability shall not issue.

Dated this _16_ day of February, 2012.

Nancy D. Freudenthal
Chief United States District Judge